IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
Western Division

JIM'S PAWN SHOP, INC.           )
d/b/a JIM'S GUN JOBBERY         )
4632 Yadkin Road                )
Fayetteville, NC 28303          )
                                )
    Petitioner                  )
                                )
        v.                      )   Civil Action No. 5:05-CV-5
                                )                              H
CARLTON BOWERS                  )
Director of Industry Operations )
Charlotte Field Division        )
Bureau of Alcohol, Tobacco,     )
Firearms & Explosives           )
6701 Carmel Road, Suite 200     )
Charlotte, NC 28226             )
                                )
    Respondent                  )

## PETITION FOR JUDICIAL REVIEW

1) This is a petition for *de novo* judicial review of the revocation of a license as a dealer (including pawnbroker) in firearms other than destructive devices. This action is brought pursuant to 18 U.S.C. § 923(f)(3).

### JURISDICTION AND VENUE

2) This court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it arises under the Constitution and laws of the United States.

3) Venue is proper in the Eastern District of North Carolina as Petitioner's place of business is in Fayetteville.

### PARTIES

4) JIM'S PAWN SHOP, INC., d/b/a JIM'S GUN JOBBERY (hereinafter

"JIM'S"), is a retailer and pawnbroker who, among other items, acquires and sells firearms. JIM'S has been a federally licensed firearms dealer since 1977.

5) Carlton Bowers (hereinafter "Bowers") is the Director of Industry Operations, Charlotte Field Division, Bureau of Alcohol, Tobacco, Firearms & Explosives (hereinafter "ATF").

## FACTS

6) A Notice of Revocation of License, dated August 17, 2004, was sent to JIM'S notifying it that its federal firearms license as a dealer (including pawnbroker) in firearms other than destructive devices, was revoked. JIM'S received the Notice of Revocation on or about August 17, 2004.

7) JIM'S timely requested a hearing pursuant to 18 U.S.C. § 923(f)(2).

8) On or about January 25, 2005, Bowers issued an Amended Notice of Revocation of License.

9) JIM'S again timely requested a hearing pursuant to 18 U.S.C. § 923(f)(2).

10) The hearing was held February 23, 2005.

11) On or about June 6, 2005, JIM'S received a Final Notice of Denial of Application or Revocation of Firearms License (hereinafter "Final Notice") from Bowers.

12) Prior to the Notice of Revocation of License, ATF adopted a "National Federal Firearms Licensee Adverse Action Policy" (ATF B 5370.2)(4/19/04), which states in part:

2

> A national policy for administering adverse actions is necessary to promote consistent and fair resolution of violations. Revocation should be undertaken for willful violations of the GCA or its regulations that could affect public safety or hamper the Bureau's ability to reduce violent crime.

¶ 2(b).

## COUNT I

13) Paragraphs 1-12 are incorporated herein by reference.

14) 27 C.F.R. § 478.125(e) requires a licensee to "enter into a record each receipt and disposition of firearms" and requires that dispositions be recorded "not later than 7 days following the date" of the sale; the regulation also sets forth the format of such record ("Acquisition & Disposition ("A&D") book").

15) Bowers found that, out of 230 firearms dispositions initially determined not to have been recorded as required by 27 C.F.R. § 478.125(e), 93 had been accounted for (68 firearms which had been received were on the premises and did not need to be recorded as dispositions, 2 firearms were "antique" firearms and did not need to be recorded as either receipts or dispositions, 2 firearms were sold during the inspection and did not need to be recorded as dispositions at that time, and 21 dispositions were recorded on the wrong line in the A&D book), leaving a total of 137 apparently unrecorded dispositions. Final Notice ¶ 13.

16) There were in fact 91 dispositions accounted for: 68 firearms which had been received were on the premises and did not need to be recorded as dispositions, 2 firearms were "antique"

3

firearms and did not need to be recorded as either receipts or dispositions, 2 firearms were sold during the inspection and did not need to be recorded as dispositions at that time, and only 19 dispositions were recorded on the wrong line in the A&D book, leaving a total of 139 apparently unrecorded dispositions.

17) Of the 139 apparently unrecorded dispositions, Bowers found that 29 were reported on an ATF Theft/Loss Report.

18) Bowers found that JIM'S "failed to timely record the disposition of 147 firearms, in violation of 27 C.F.R. § 478.125(e)." Final Notice ¶ 19.

19) Bowers concluded that such failure was "a willful violation of 27 C.F.R. § 478.125(e)." Final Notice ¶ 39.

20) For the 29 firearms which were reported as stolen or lost on an ATF Theft/Loss Report, 27 C.F.R. § 478.125(e) does not require that a disposition entry be made in the A&D book.

21) For the 29 firearms which were reported as stolen or lost on an ATF Theft/Loss Report, JIM'S did not violate 27 C.F.R. § 478.125(e).

22) As to the remaining apparently unrecorded dispositions, 1 had been recorded and 17 were related to duplicate acquisition entries for which a disposition entry was recorded and did not require a duplicate disposition entry, for a total of 18 apparently missing disposition entries which in fact were not missing.

23) Further, as to the remaining apparently unrecorded dispositions, 3 were seized by police and thus not disposed of by

JIM'S and did not require a disposition entry.

24) Further, as to the remaining apparently unrecorded dispositions, 16 dispositions had not been recorded as dispositions because, although the firearm had been sold and the Form 4473 completed, there was a discrepancy in a serial number which had not been resolved; 17 dispositions were transfers to another store also owned by the owner of JIM'S; 1 disposition was of a firearm which had been on consignment and was taken off consignment by the customer; 5 dispositions were returns to customers of firearms which had been returned to JIM'S after being sent to the manufacturer for repair; 10 dispositions were returns to customers after being repaired; 10 dispositions were of firearms which had been sent to the manufacturer for repair; 18 dispositions were sales made with another firearm in a multiple sale where only one was recorded as a disposition; and 3 dispositions were transfers to another licensee, for a total of 80 actual unrecorded dispositions.

25) Further, as to the remaining apparently unrecorded dispositions, 9 had been resolved during a 1996 compliance inspection, but ATF had not instructed JIM'S on the disposition entry to be made.

26) 18 U.S.C. § 3282 provides that the statute of limitations for violations of Chapter 44 of Title 18, of which § 923(g)(1)(A) is a part, is five (5) years.

27) 28 U.S.C. § 2462 provides, in pertinent part:

[A] proceeding for the enforcement of any . . . forfeiture,

pecuniary or otherwise, shall not be entertained unless commenced within five years from the date when the claim first accrued . . . .

28) § 2462 applies to an administrative license proceeding.

29) The Notice of Revocation of License was prepared and served on August 17, 2004, more than five (5) years after the 1996 compliance inspection.

30) The Notice of Revocation of License is void as to the 9 unrecorded dispositions which had been resolved during the 1996 compliance inspection.

31) JIM'S did not willfully violate 27 C.F.R. § 478.125(e) in that the failures to record all but 80 dispositions in the A&D book were not violations of 27 C.F.R. § 478.125(e) and, as to the 80 unrecorded dispositions, were inadvertant, technical record-keeping errors which were not done intentionally and purposely and with the intent to do something the law forbids or with the bad purpose to disobey or to disregard the law.

32) JIM'S failures to record the 80 dispositions did not either affect public safety or hamper ATF's ability to reduce violent crime.

## COUNT II

33) Paragraphs 1-12 are incorporated herein by reference.

34) Bowers found that, on 20 occasions, JIM'S "failed to record the acquisition of a firearm by the close of the next business day following the date of such purchase or acquisition, in violation of 27 C.F.R. § 478.125(e)." Final Notice ¶ 22.

35) Bowers concluded that JIM'S violation of 27 C.F.R. §

6

478.125(e) was willful. Final Notice ¶ 40.

36) JIM'S did not willfully violate 27 C.F.R. § 478.125(e) in that the failures to enter the 20 acquisitions in the A&D book were inadvertant, technical record-keeping errors which were not done intentionally and purposely and with the intent to do something the law forbids or with the bad purpose to disobey or to disregard the law.

37) JIM'S failures to enter the 20 acquisitions in the A&D book did not either affect public safety or hamper ATF's ability to reduce violent crime.

COUNT III

38) Paragraphs 1-12 are incorporated herein by reference.

39) Bowers found that JIM'S "failed to record any identification document information" on "six occasions," although there were only five ATF Forms 4473 introduced into evidence. Final Notice ¶ 25.[1]

40) Bowers found that, on four other occasions, "the transferee listed a North Carolina residence address but [JIM'S] listed an out-of-State identification document in Item 18a." Final Notice ¶ 25.

41) Bowers found that, "on nine occasions, [JIM'S] failed to record identification document information verifying the residence address of the transferee, in violation of 27 C.F.R. § 478.124(c)(3)." Final Notice ¶ 29.

---

[1] In the first sentence of ¶ 41 of the Final Notice, Bowers also referred to "five occasions" where JIM'S failed to record transferee information. In fact, there were only five occasions where JIM'S failed to record transferee information.

7

42) Bowers concluded, with respect to "five occasions," that JIM'S "failure on six (sic) occasions to record any information regarding the identification document presented by a transferee to be a willful violation of 27 C.F.R. § 478.124(c)(3)(i)." Final Notice ¶ 41.

43) Bowers further concluded that JIM'S acceptance on four occasions of "an out-of-State any identification document for an individual who listed a North Carolina residence address" was not willful. Final Notice ¶ 42.

44) Each of the five occasions relating to the failure to record information regarding the identification document presented by a transferee involved a regular customer and the identification document had been checked against, and verified by, customer information already possessed by JIM'S.

45) JIM'S did not willfully violate 27 C.F.R. § 478.124(c)(3)(i) in that the failures to record information regarding the identification document presented by transferees were inadvertant, technical record-keeping errors which were not done intentionally and purposely and with the intent to do something the law forbids or with the bad purpose to disobey or to disregard the law.

46) JIM'S failures to record information regarding the identification document presented by transferees did not either affect public safety or hamper ATF's ability to reduce violent crime.

## COUNT IV

47) Paragraphs 1-12 are incorporated herein by reference.

8

48) Bowers found that, "on eight occasions, [JIM'S] failed to record information relating to the residency of an alien-transferee, as required by 27 C.F.R. § 478.124(c)(3)(ii)." Final Notice ¶ 30.

49) 27 C.F.R. § 478.124(c)(3)(ii) requires a licensee, "in the case of a transferee who is an alien legally in the United States" to:

> cause the transferee to present documentation establishing that the transferee is a resident of the State (as defined in § 478.11) in which the licensee's place of business is located . . . .

50) 27 C.F.R. § 478.11 states in pertinent part (in the definition of "State of residence") that an alien legally in the United States:

> shall be considered to be a resident of a State only if the alien is residing in the State and has resided in the State for a period of at least 90 days prior to the date of sale or delivery of a firearm.

51) Bowers concluded that, "in six [of the eight] cases, the transferee presented a valid North Carolina pistol permit" but JIM'S "failure to record" information "showing that an alien-transferee resided in North Carolina for at least 90 days prior to the transfer of a firearm" was "a willful violation." Final Notice ¶ 43.

52) To the extent 27 C.F.R. § 478.11 and § 478.124(c)(3)(ii) require an alien legally in the United States to provide greater proof of residency than a citizen, they are void because they are not "necessary to carry out the provisions" of Chapter 44. 18 U.S.C. § 926(a).

53) The only requirement of Chapter 44 relating to residency is

9

that the buyer reside in "the state in which the licensee's place of business is located . . . ." 18 U.S.C. § 922(b)(3).

54) There is no statutory requirement that legal aliens reside "continuously for at least 90 days prior to the transfer of the firearm."

55) To the extent 27 C.F.R. § 478.11 and § 478.124(c)(3)(ii) require an alien legally in the United States to provide greater proof of residency than a citizen, those provisions violate the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

56) JIM'S did not willfully violate 27 C.F.R. § 478.11 and § 478.124(c)(3)(ii) to the extent they require an alien legally in the United States to provide greater proof of residency than a citizen because those provisions are not "necessary to carry out the provisions" of Chapter 44 and violate the Equal Protection Component of the Due Process Clause of the Fifth Amendment.

57) JIM'S did not willfully violate 27 C.F.R. § 478.11 and § 478.124(c)(3)(ii) to the extent they require an alien legally in the United States to provide greater proof of residency than a citizen because the failures to record such proof of residency information were not done intentionally and purposely and with the intent to do something the law forbids or with the bad purpose to disobey or to disregard the law.

58) JIM'S failures to record proof of residency information did not either affect public safety or hamper ATF's ability to reduce

violent crime.

## Count V

59) Paragraphs 1-12 are incorporated herein by reference.

60) Bowers found that "[o]n two occasions, [JIM'S] transferred a firearm to an unlicensed person without conducting a NICS check, in violation of 18 U.S.C. § 922(t)(1) and 27 C.F.R. § 478.102(a)." Final Notice ¶ 32.

61) Bowers did not conclude that JIM'S transfer of a firearm on two occasions to an unlicensed person without conducting a NICS check was a willful violation of 18 U.S.C. § 922(t)(1) and 27 C.F.R. § 478.102(a).

62) In the absence of a conclusion that JIM'S transfer of a firearm on two occasions to an unlicensed person without conducting a NICS check was a willful violation of 18 U.S.C. § 922(t)(1) and 27 C.F.R. § 478.102(a), such violations were not shown to be willful.

## Count VI

63) Paragraphs 1-12 are incorporated herein by reference.

64) Bowers found that, "on seven occasions, [JIM'S] failed to timely report the multiple sale of pistols and/or revolvers, in violation of 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. § 478.126a." Final Notice ¶ 35.

65) Bowers found JIM'S "failure to timely report the multiple sale of pistols and revolvers on six [of seven] occasions to be a willful violation of 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. § 478.126a." Final Notice ¶ 45.

66) JIM'S did not willfully violate 18 U.S.C. § 923(g)(3)(A) and 27 C.F.R. § 478.126a in that the failures to timely report the multiple sale of pistols and revolvers on six occasions were inadvertant, technical record-keeping errors which were not done intentionally and purposely and with the intent to do something the law forbids or with the bad purpose to disobey or to disregard the law.

67) JIM'S failures to timely report the multiple sale of pistols and revolvers on six occasions did not either affect public safety or hamper ATF's ability to reduce violent crime.

WHEREFORE, JIM'S prays that this court: 1) decide that Bowers erred and was not authorized to revoke JIM'S's license; 2) order Bowers to withdraw the revocation; and 3) award such other relief, including costs and attorney's fees (pursuant to 18 U.S.C. § 924(d)(2)(B) and 28 U.S.C. § 2412), as appropriate.

Respectfully submitted,

JIM'S PAWN SHOP, INC.
d/b/a JIM'S GUN JOBBERY
By counsel

Richard E. Gardiner
Suite 404
10560 Main Street
Fairfax, VA 22030
(703) 352-7276
(703) 359-0938 (fax)
VA Bar #19114

*[signature]* for Gerald Beaver

H. Gerald Beaver
L.R. 83.1 Counsel
Beaver, Holt, Sternlicht & Courie, P.A.
230 Green Street
P. O. Box 2275
Fayetteville, NC 28302
(910) 323-4600
(910) 323-3403 (fax)
State Bar Number 5503